UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JEANETTE MIDDLETON, § | |
| § | |
| Plaintiff, § | |
| vs. § | CIVIL ACTION NO. H-09-CV-3270 |
| § | |
| LIFE INSURANCE COMPANY OF NORTH § | |
| AMERICA; d/b/a CIGNA GROUP § | |
| INSURANCE, *et al*, § | |
| § | |
| Defendants. § | |

# MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Pending before the Court are the defendant's, Life Insurance Company of North America ("LINA"),[1] motion for partial dismissal brought pursuant to FED. R. CIV. P. 12(b)(6), motion to strike jury demand and brief in support (Docket Entry Nos. 5 and 6). The plaintiff, Jeanette Middleton ("Middleton"), has filed a response in opposition to LINA's motions (Docket Entry No. 10) and LINA has filed a reply (Docket Entry No. 12). After having carefully reviewed the pleadings, the motions, response, reply and the applicable law, the Court is of the opinion that LINA's motions should be GRANTED.

## II.   FACTUAL BACKGROUND

Middleton is a former employee of the Halliburton Energy Services ("Halliburton"). During her tenure at Halliburton, she worked as an executive secretary for both the Vice President of Finance and the Director of Human Resources. As a full time employee there, she participated in Halliburton's employee benefit plans, including its long-term disability plan (the

---

[1] LINA contends that it has been improperly sued in this civil action as "Life Insurance Company of North America d/b/a as 'CIGNA' and 'CIGNA Group Insurance' and Long Term Disability Insurance Group Policy No. LK-98004."

"LTD Plan"). As an executive secretary, Middleton was charged with performing a variety of tasks, including maintaining a full time schedule; exhibiting a pleasant demeanor; communicating effectively in person and by telephone; typing on a keyboard; writing; managing her bosses' schedules; preparing detailed and accurate reports; assembling information from various sources for use by her bosses; and completing various projects in a timely manner without breaks or rest periods. Her job duties also required her to accurately deal with figures, mathematical computations and financial data. As a consequence, she was required to be alert, attentive to detail, and focused for extended periods of time during the course of a typical work-day.

In 1999, Middleton began experiencing pain and swelling in her face and mouth. As the pain intensified, she sought treatment from multiple medical specialists to determine the etiology of her pain and obtain treatment. In October of 2003, she was diagnosed with "Trigeminal neuralgia" ("TN"), a chronic pain condition that affects the trigeminal or the 5th cranial nerve. "TN" is also referred to as "tic douloureux." It causes extreme, sporadic, sudden burning or shock-like face pain that lasts anywhere from a few seconds to several minutes per episode. Middleton alleges that the pain episodes usually occur in quick succession and that the intensity of the pain is often severe. The apparent cause of "TN" is compression on the trigeminal nerve on the brainstem. This compression causes the wearing away of the protective coating around the nerve as well as severe and debilitating pain. Middleton alleges that there is no cure for this condition.

She reports that she also suffers from "Temporal arteritis" ("TA"), which is also known as "cranial arteritis" or "giant cell arteritis." This condition causes her to experience severe headaches, joint pain, facial pain, fever and difficulties with her vision. Her treating physician

has diagnosed the condition as "giant cell arteritis" because the cells of the inflamed temporal artery tissue appear exceedingly large or "giant" under a microscope. Middleton also exhibits "Multiple intracranial aneurysms," also referred to as "brain aneurysms" or "cerebral aneurysms." This condition is marked by abnormal outward bulging of the arteries in the brain. To date, she has had a total of 4 intracranial aneurysms. She has undergone two aneurysm clippings as well as a surgical procedure called an Endovascular embolization. She currently suffers from one known untreated aneurysm.

Middleton alleges that her condition prevents her from performing the essential duties of her job. She alleges that she becomes incapacitated by the sudden, severe, electric shock-like, stabbing pain in her jaw, cheek, face and scalp. She contends that she had frequent absences from work due to her severe pain and medical treatment. She asserts that when she was working, she would experience severe episodes of pain that required frequent, unscheduled breaks in order to recover. She alleges that her symptoms and pain are still present and that she is still undergoing medical treatment, preventing her from maintaining regular attendance at any place of employment. She further contends that her condition has not substantially improved since becoming disabled, and that she remains unable to work in any gainful employment setting.

Middleton applied for short term disability benefits under a related employee benefit plan administered by LINA. In March of 2003, LINA approved her short term disability benefits, finding that she was disabled from her condition and was unable to work. Because of her disabling condition, she became unable to return to work and lost 100% of her earned income. At the end of her short term disability period, Middleton asserts that she was unable to return to work at Halliburton and filed a claim for long term disability benefits under the LTD Plan. She reports that her attending physician opined that she was unable to engage in her regular

occupation and that she was unable to engage in gainful employment elsewhere. In support of his findings, Middleton contends that she provided medical records to LINA that documented her inability to work as well as the fact that she would likely not recover from her condition.

On or about March 19, 2003, after filing a claim for benefits, the Social Security Administration found Middleton to be totally disabled and incapable of engaging in gainful employment. Thereafter, around August of 2003, Middleton filed a claim for long term disability benefits ("LTD benefits") with LINA. LINA initially denied her claim. Her claim, however, was later approved by it, upon a finding that she suffered from a "disability" within the meaning of the terms in the LTD Plan. The term "disability" within the meaning of the LTD Plan is defined to mean:

> unable to perform all the material duties of her regular occupation, or solely due to Injury or Sickness, she is unable to earn more than 80% of her indexed covered earnings; and

> after Disability Benefits have been payable for 24 months, she is unable to perform all the material duties of any occupation for which she may be reasonably become qualified based on education, training or experience, or solely due to injury or sickness, she is unable to earn more than 60% of his or her indexed covered earnings.

(Docket Entry No. 1, ¶ 9). Beginning September 13, 2003, LINA began paying certain LTD benefits to her.

Middleton alleges that she has followed her physician's prescribed course of treatment, which includes pain medication and other pain management therapies. One such treatment therapy, performed in 2005, required her to have all of her teeth extracted in an effort to alleviate pain. Despite treatment, however, she contends that her severe pain cannot be further reduced or eliminated. She alleges that she has suffered substantial side effects from the pain medication administered to her, including a substantial reduction in her mental focus, a lack of concentration

and limitations on her ability to work. She further alleges that her current medications make her drowsy, inattentive and slow in thought, speech and action. Because of the severe and debilitating nature of the pain she experiences, Middleton alleges that she continues to be unable to engage in her usual occupation or any other gainful employment.

In November of 2007, LINA wrote to Middleton and informed her that her LTD benefits would soon cease because she no longer satisfied the definition of "disability" within the meaning of the LTD Plan. Thereafter, LINA terminated her LTD benefits based, at least in part, on a Neuro Cognitive Independent Medical Examination that it had obtained relative to her condition.

Subsequently, Middleton appealed LINA's denial of her claim for LTD benefits. She contends that, during her appeal, she provided LINA with evidence in support of her continued disability in the form of medical records and sworn testimony from her treating physicians. However, in September of 2008, LINA upheld its decision to terminate her LTD benefits. In February of 2009, Middleton again appealed LINA's decision to deny her benefits. Nonetheless, she contends that LINA found that carpel tunnel syndrome prevented her from working from November 28, 2007 to April 3, 2009, and offered to pay her LTD benefits for that period only. Middleton argues that she has never claimed to be disabled from complications caused by carpel tunnel syndrome. All of Middleton's internal appeals have since been exhausted.

On October 8, 2009, she commenced the instant action against LINA and the LTD Plan alleging claims for the recovery of benefits under 29 U.S.C. § 1132(a)(1)(B), breach of fiduciary duty under 29 U.S.C. § 1109 and attorneys' fees and costs. She has also filed a jury demand. LINA now moves to dismiss her breach of fiduciary duty claim, her claims against the Long Term Disability Insurance Group Policy No. FLK-098004 and to strike her jury demand.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929 (2007). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 - 65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)).

More recently, in *Ashcroft v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, ---U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, ---U.S. ----, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Ashcroft*, ---U.S. ----, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail. *Id.* at 563, 1969 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). In this regard, the Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

IV. **ANALYSIS AND DISCUSSION**

　　A. **Middleton's Breach of Fiduciary Duty Claim**

LINA moves for dismissal of Middleton's breach of fiduciary claim brought pursuant to 29 U.S.C. § 1109,[2] asserting that Middleton may not simultaneously seek to recover benefits under the ERISA plan and pursue a claim for breach of fiduciary duty under ERISA. Middleton

---

[2] 29 U.S.C. § 1109 provides, in relevant part, as follows:

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

appears to concede that an ERISA claimant may not assert a claim for breach of fiduciary duty under § 1109 where that claimant also makes a claim for plan benefits under § 1132(a)(1)(B), as she asserts no response in opposition to LINA's motion in this regard. She also does not deny that she seeks to recover plan benefits under § 1132(a)(1)(B). Instead, she argues that the equitable relief that she seeks is not available to her under § 1132(a)(1) and, thus, is expressly permitted by § 1132(a)(3) of ERISA and other applicable law.

Specifically, she asserts that LINA repeatedly disregarded medical records and requested information in an effort to intentionally delay consideration of her claim. She argues that LINA repeatedly reviewed and demanded medical evidence that was not in conformity with a reasonable application and interpretation of the applicable benefits plan. As a remedy, she seeks, pursuant to § 1132(a)(3), "prospective equitable relief to enjoin future breaches of fiduciary duty that are committed pursuant to [LINA's] current established practices that are inconsistent with the plan and the fiduciary duties under ERISA." (*See* Docket Entry No. 10, ¶ 21.) She also seeks "equitable relief to enjoin [LINA] from continuing its established practice of harassment and unreasonable conduct, which is inconsistent with the fiduciary duties and the requirements of reasonableness under ERISA." (*Id.*, ¶ 23.)

The Court determines that the dismissal of Middleton's breach of fiduciary claim, whether brought pursuant to 29 U.S.C. § 1109(a) or § 1132(a)(3), is appropriate in this instance. As an initial matter, it notes that Middleton's claim for breach of fiduciary duty under § 1132(a)(3) was not raised in her original complaint, but rather was raised for the first time in response to LINA's motion to dismiss. As such, it is not properly before this Court. *See Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990). Nevertheless, the Court determines that, even if Middleton's breach of fiduciary duty claim under § 1132(a)(3) were properly pled, it

would still fail, just as her claim under § 1109(a)[3] does. *See Newell ex rel. Snow v. Aetna Life Ins. Co.*, No. CIV. A. 302-CV-0475M, 2002 WL 1840925, * 2 (N.D. Tex. Aug. 8, 2002) (citing *Rhorer v. Raytheon Eng'rs and Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999) (reasoning that because the plaintiff had adequate redress for her disavowed claims through § 1132(a)(1), she was precluded from simultaneously pursuing a breach of fiduciary duty claim under § § 1109 and 1132(a)(2) or (3) against the individual Defendants.").

It is well-settled in the Fifth Circuit that "an ERISA plaintiff may bring a private action for breach of fiduciary duty *only* when no other remedy is available under 29 U.S.C. § 1132." *Rhorer*, 181 F.3d at 639 (citing *Varity Corp. v. Howe*, 516 U.S. 489, 510 - 16, 116 S. Ct. 1065, 1077 – 79, 134 L.Ed.2d 130 (1996); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998)) (emphasis added). "When a [participant or] beneficiary wants what was supposed to have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under § 502(a)(1)(B) of ERISA [, 29 U.S.C. § 1132(a)(1)(B),] rather than a [breach of] fiduciary duty claim brought pursuant to § 502(a)(3) [, § 1132(a)(3)]." *McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000) (citing *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1335 (5th Cir. 1992)). "In *Varity*, the Supreme Court emphasized that § 1132(a)(3) is a 'catchall' provision that provides relief for injuries that are not otherwise adequately addressed under ERISA." *Khan v. American Intern. Group, Inc.*, 654 F. Supp.2d 617, 626 (S.D. Tex. 2009) (citing *Varity*, 516 U.S. at 515, 116 S. Ct. 1065)). "Following this guidance, the Fifth Circuit has concluded that if a plaintiff can pursue plan benefits under § 1132(a)(1), the plaintiff

---

[3] "Section 1109 itself does not provide an independent cause of action on the part of beneficiaries [or participants] for individual compensatory damages." *Ducre v. SBC-Southwest Bell*, 402 F. Supp.2d 766, 771 (W. D. Tex. 2005) (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 147, 105 S. Ct. 3085, 87 L. Ed.2d 96 (1985) (holding § 1109 authorizes only actions on behalf of the ERISA plan itself as a whole, and provides no implied cause of action for extracontractual damages caused by improper claims processing)). "29 U.S.C. § 1132(a)(3) provides for civil actions against the plan administrator for a breach of a fiduciary duty, including a violation of § 1109." *Ducre*, 402 F. Supp.2d at 771.

has an adequate remedy and may not also pursue a claim under § 1132(a)(3)." *Khan*, 654 F. Supp.2d at 626 (citing *Rhorer*, 181 F.3d at 639.).

Here, the fact that Middleton characterizes the relief that she seeks under § 1132(a)(3) as "prospective injunctive relief to prevent future violations of fiduciary duties that [LINA] has a current practice of committing" is of no moment and does not alter this Court's conclusion. In fact, "[s]uch attempts to recharacterize a desired § 502(a)(3) remedy as a purely equitable form of relief, like an injunction, have been consistently rejected." *Amschwand v. Spherion Corp.*, 505 F.3d 342, 348 n.7 (5th Cir. 2007) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 -11, 122 S. Ct. 708, 713, 151 L. Ed.2d 635 (2002) (reasoning that the plaintiff's "alternative characterization of the remedy she seeks under § 502(a)(3) as injunctive relief that would preclude [the defendant's] withholding payment of the make-whole damages is essentially indistinguishable from a demand for payment.") (other citations omitted)); *see also Tolson*, 141 F.3d at 610 ("Because [the plaintiff] has adequate redress for disavowed claims through his right to bring suit pursuant to section 1132(a)(1), he has no claim for breach of fiduciary duty under section 1132(a)(3)."). Moreover, Middleton's attempts to distinguish her breach of fiduciary duty claim from those asserted in both *Rhorer* and *Tolson* are equally unavailing and do not support a different result.

### B.     Middleton's Claims Against the Policy

LINA also moves to dismiss the "Long Term Disability Insurance Group Policy No. FLK-098004" ("the Policy") as a party to the instant action, asserting that Middleton has no cognizable basis to assert a claim against the Policy. Middleton makes no response in opposition to LINA's argument in this regard. Based on the applicable law, the Court determines that dismissal of the Policy as a party to this action is warranted in this case.

Specifically, section 502 provides that "[a]ny money judgment . . . against an employee benefit plan shall be enforceable *only against the plan as an entity* and shall not be enforceable against any other person unless liability against such person is established in his individual capacity." 29 U.S.C. § 1132(d)(2) (emphasis added). "Numerous courts[,] [however,] have recognized that 'there is a split in authority' concerning whether 'the ERISA plan itself is the only proper party defendant on a claim pursuant to ERISA 502(a)(1)(B).'" *Carroll v. United of Omaha Life Ins. Co.*, 378 F. Supp.2d 741, 746 (E.D. La. 2005) (quoting *Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1194 (8th Cir. 1998)). The Fifth Circuit, while having analyzed this issue, has not unequivocally ruled on this issue. *Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 349 (5th Cir. 2003), *cert. denied*, 540 U.S. 1110, 124 S. Ct. 1078, 157 L. Ed.2d 898 (2004) (reasoning that "[w]hile the language [in Section 502(d)(2) ] suggests that the plan is the only proper party defendant, other Circuits have allowed employees to maintain actions against their employers for the denial of benefits [where] . . . it was the employer's decision to deny benefits . . . and when the employer is the plan administrator or sponsor.") (internal citations omitted).

Notwithstanding this split in authority, Middleton does not allege that the Policy constitutes the plan, the plan administrator or the plan sponsor, as the terms are defined pursuant to ERISA. Nor does she allege that the Policy is the ultimate authority for benefit eligibility determinations. Accordingly, the Policy should be dismissed as a party to this action, as it is merely a physical document that funds an employee benefit plan—not the plan itself.

### C. LINA's Motion to Strike Middleton's Jury Demand

LINA further moves to strike Middleton's jury demand, asserting that Fifth Circuit case law as well as the law in a majority of other circuits hold that no right to a jury trial exists in ERISA cases. Middleton lodges a number of arguments in opposition to LINA's motion to

strike. First, Middleton argues that ERISA does not prohibit or preclude a jury trial. Second, Middleton avers that she has a Seventh Amendment right to a jury trial on legal issues triable to a jury at common law. In support of this contention, she argues that the Fifth Circuit's decision in *Borst v. Chevron*, 36 F.3d 1308, 1323 – 24 (5th Cir. 1994) is distinguishable from her case. Specifically, she contends that her claim for benefits is legal in nature--not equitable. To this end, she argues that, unlike the plaintiffs in *Borst*, she seeks compensatory damages--not restitution. She further asserts that her claim for money damages is not intertwined with her claim for injunctive relief. In the alternative, she contends that even if this Court concludes that she has no right to a jury trial, a jury should, nonetheless, be empaneled in this case as an advisory to the Court under FED. R. CIV. P. 39. This Court disagrees.

First, this Court's examination of Middleton's complaint clearly indicates that her claims in this case are governed by ERISA and are brought "to recover benefits due to [her] under the terms of her plan, to enforce her rights under the terms of the plan [and] to clarify her rights to future benefits under the terms of the plan." (Docket Entry No. 1, ¶ 32; *see also* 29 U.S.C. § 1132(a)(1)(B)). Although ERISA does not expressly provide for a jury trial, the Fifth Circuit, along with a majority of other circuit courts, have held that the right to a jury trial is not available under ERISA because such actions are inherently equitable. *Borst v. Chevron*, 36 F.3d 1308, 1323 – 24 (5th Cir. 1994) (citing *Calamia v. Spivey*, 632 F.2d 1235, 1237 (5th Cir. 1980) (reasoning that "inquiry into whether plan administrators acted arbitrarily and capriciously is action usually performed by judges") (other citations omitted); *see, e.g.*, *Katsaros v. Cody*, 744 F.2d 270 (2d Cir. 1984), *cert. denied*, 469 U.S. 1072, 105 S. Ct. 565, 83 L. Ed.2d 506 (1984); *Turner v. CF & I Steel Corp.*, 770 F.2d 43 (3d. Cir. 1985), *cert. denied*, 474 U.S. 1058, 106 S. Ct. 800, 88 L. Ed.2d 776 (1986); *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1006-07 (4th Cir.

1985) (no right to a jury trial in termination of pension benefits); *Wardle v. Central States, Southeast & Southwest Areas Pension Fund*, 627 F.2d 820 (7th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S. Ct. 922, 66 L.Ed.2d 841 (1981) (ERISA does not grant plaintiff a right to a jury trial); *In re Vorpahl*, 695 F.2d 318 (8th Cir. 1982) (no jury trial required in cases brought pursuant to section 502); *Nevill v. Shell Oil Co.*, 835 F.2d 209, 213 (9th Cir. 1987) (reasoning "that in ERISA actions there is no independent . . . statutory right to a jury trial."). Thus, in light of this great weight of authority, the Court determines that there is no implied statutory right to a jury trial pursuant to ERISA.

Second, the Court determines that Middleton does not have a right to a jury trial in this case pursuant to the Seventh Amendment. Despite her claims to the contrary, this Court finds the Fifth Circuit's decision in *Borst* is applicable here. In *Borst*, the Fifth Circuit concluded that "[t]o determine whether a particular action will resolve legal rights, [a court must] examine both the nature of the issues involved and the remedy sought." *Borst*, 36 F.3d at 1323 (quoting *Chauffeurs, Teamsters, and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565, 110 S. Ct. 1339, 1345, 108 L. Ed.2d 519 (1990)). "This analysis consists of two inquiries: (1) a comparison of the present statutory action to 18th-century actions in courts of England before the merger of the courts of law and equity; and (2) an examination of the relief sought to determine whether it is legal or equitable in nature"—with the latter inquiry bearing the most weight. *Id.* The Fifth Circuit also reasoned that "[a] [p]laintiff['s] requests for monetary recovery on other claims, traditionally the form of relief offered in courts of law, do[es] not mandate a conclusion that [his or her] action is legal in nature." *Borst*, 36 F.3d at 1324 (citing *Calamia*, 632 F.2d at 1236 – 1237 ("The mere fact that the appellant would receive a monetary award if he prevailed does not compel the conclusion that he is entitled to a jury trial")). Further, the Fifth Circuit, in *Borst*

determined that a plaintiff's claim seeking restitution of payments wrongly held by a defendant employer sounded in equity and therefore, the plaintiffs did not have a constitutional right to a jury trial under the Seventh Amendment.

Here, Middleton's complaint indicates that she is seeking relief for past and future benefits payable under the plan; damages for breach of fiduciary duties; attorneys' fees and costs; and various forms of equitable relief, "including restitution for lost benefits, consequential damages and, when permitted, punitive damages" through 29 U.S.C. § § 1132 (a)(1)(B) and 1109. (Docket Entry No. 1, Section XI). Indeed, an examination of the overall nature of the relief sought by Middleton in this case, indicates that she is seeking to be *restored* to her previous position absent LINA's alleged wrongful retention of plan assets and breach of duty. An "inquiry into the *overall* relief sought [by her] reveals that any damages-type remedy [she seeks] is thoroughly and inexorably intertwined with wholly equitable forms of relief." *Broadnax Mills, Inc. v. Blue Cross and BlueShield of Virginia*, 876 F. Supp. 809, 817 (E.D. Va. 1995). "Moreover, ERISA § 1109 plainly intertwines the two remedies." *Id.* (citing *Tull v. United States*, 481 U.S. 412, 425, 107 S. Ct. 1831, 1839, 95 L. Ed.2d 365 (1986)). Thus, where, as here, the plaintiff's prayer for relief "is restitutionary in nature or is intertwined with claims for injunctive relief, the action is equitable rather than legal in nature. *Borst*, 36 F.3d at 1324 (citing *Terry*, 494 U.S. at 570 - 71, 110 S. Ct. at 1348). Consequently, this Court finds that the Seventh Amendment does not entitle Middleton to a jury trial for her claims alleged in this case. Further, Middleton's request for the empanelment of an advisory jury is also denied. Middleton's jury demand is hereby stricken.

## V.     CONCLUSION

Based on the foregoing discussion, LINA's motion for partial dismissal and motion to strike is GRANTED.  Middleton's claim for breach of fiduciary duty is dismissed; the Policy is hereby dismissed as a party to this action; and Middleton's jury demand is hereby stricken.

IT IS SO **ORDERED**.

SIGNED at Houston, Texas this 12th day of February, 2010.

_____
Kenneth M. Hoyt
United States District Judge